# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENELL CAVER, | Case No. 1:11-cv-01025-AWI-SKO (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED |
| v. | |
| E. GOMEZ, et al., | (Doc. 76) |
| Defendants. | OBJECTION DEADLINE: FIFTEEN DAYS RESPONSE DEADLINE: FIFTEEN DAYS |

**I.     Procedural History**

Plaintiff Denell Caver ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on June 20, 2011. This action is proceeding on Plaintiff's second amended complaint, filed on April 10, 2012, against Defendants Stark, Gomez, and Garcia ("Defendants") for acting with deliberate indifference to Plaintiff's safety, in violation of the Eighth Amendment of the United States Constitution. The events giving rise to Plaintiff's claims occurred in December 2010 at Kern Valley State Prison ("KVSP") in Delano, California.

On January 23, 2015, Defendants filed a motion for summary judgment. (Docs. 76, 77.) Plaintiff filed an opposition on February 11, 2015, and Defendants filed a reply and evidentiary

objections on March 18, 2015.[1]  (Docs. 78, 88, 89.)  Plaintiff subsequently filed a surreply on March 30, 2015.[2]  (Doc. 90.)

Defendants' motion for summary judgment has been submitted upon the record without oral argument.  Local Rule 230(*l*).  For the reasons that follow, the Court recommends that it be denied and this case be set for trial.

## II.  **Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

---

[1] Defendants neglected to serve Plaintiff with the requisite notice of the requirements for opposing their motion, a deficiency Plaintiff pointed out in his opposition. *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998). (Doc. 78.) On February 19, 2015, the Court ordered Defendants to serve the notice and informed Plaintiff he could either stand by his opposition or file an amended opposition that was complete within itself. (Doc. 81.) Defendants served the notice and on March 4, 2015, Plaintiff notified the Court of his election to stand on the opposition he filed. (Docs. 84, 85.) After obtaining a brief extension of time, Defendants filed their reply.

[2] Parties do not have the right to file surreplies and motions are deemed submitted when the time to reply has expired. Local Rule 230(l). The Court generally views surreplies with disfavor. *Hill v. England*, No. CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D.Cal. 2005) (citing *Fedrick v. Mercedes-Benz USA, LLC*, 366 F.Supp.2d 1190, 1197 (N.D.Ga. 2005)). However, district courts have the discretion to either permit or preclude a surreply. *See U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable surreply"); *JG v. Douglas Cnty. School Dist.*, 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file surreply where it did not consider new evidence in reply); *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (new evidence in reply may not be considered without giving the non-movant an opportunity to respond). In this instance, it is not necessary for the Court to consider the surreply and it is disregarded.

2

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

**III.  Discussion**

    **A.  Evidentiary Objections**

Defendants identified eleven evidentiary objections. It is neither necessary for the Court to address each one individually nor is it the practice of the Court to do so in the context of summary judgment. *See Oyarzo v. Tuolumne Fire Dist.*, 955 F.Supp.2d 1038, 1052 n.1 (E.D.Cal. 2013) ("It is not this Court's practice to rule on evidentiary matters individually in the context of summary judgment, unless otherwise noted."); *Capital Records, LLC v. BlueBeat, Inc.*, 765 F.Supp.2d 1198, 1200 n.1 (C.D.Cal. 2010); *Burch v. Regents of Univ. of California*, 433 F.Supp.2d 1110, 1118-22 (E.D.Cal. 2006). Accordingly, Defendants' objections are addressed generally and as a group as follows.

The objections to various arguments in Plaintiff's eleven- page brief are disregarded, as the brief is not verified and has no evidentiary value. *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004); *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 762 (9th Cir. 1987). (Doc. 89, Objs. 1-5.)

Defendants' objections to official prison records for lack of authentication are overruled. Fed. R. Evid. 901(b)(4); *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532-33 (9th Cir. 2011). The records are subject to authentication under Rule 901(b)(6), and the Court notes the absence of any evidence or argument suggesting the existence of a legitimate challenge to the records on authentication grounds. *See Chamberlain v. Les Schwab Tire Center of California, Inc.*, No. 2:11-cv-03105-JAM-DAD, 2012 WL 6020103, at *2 (E.D.Cal. Dec. 3, 2012) (citing *Burch v. Regents of Univ. of California*, 433 F.Supp.2d 1110, 1120 (E.D.Cal. 2006)) (rejecting "purely procedural" authentication objection). In addition, Defendants object to at least one document which was likely disclosed by them during discovery and which was submitted first by them in support of their motion for summary. (Doc. 76-2, Motion, Ex. F4; Doc. 89, Obj. 7.) An authentication objection in this circumstance is improper. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 777 (9th Cir. 2002).

Regarding Defendants' hearsay objections, the Court observes that statements which are not introduced for the truth of the matter asserted – such as those introduced to show the effect on the listener - are not hearsay. Fed. R. Evid. 801; *U.S. v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991); *Endsley v. Luna*, 750 F.Supp.2d 1074, 1091 n.7 (C.D.Cal. 2010). Further, an opposing party's statement offered against that party is not hearsay, Fed. R. Evid. 801(d)(2), and, depending on the circumstances, official prison records may fall within the hearsay exceptions for records of a regularly conducted activity and for public records, Fed. R. Evid. 803(6), (8); *e.g.*, *U.S v. Hall*, 419 F.3d 980, 988 (9th Cir. 2005); *U.S. v. Sims*, 617 F.2d 1371, 1376-77 (9th Cir. 1980); *U.S. v. Chong*, 98 F.Supp.2d 1110, 1118-19 (D.Hawai'i 1999); *Edwards v. Clarey*, No. 2:11-cv-1725-EFB P, 2014 WL 546368, at *6 n.3 (E.D.Cal. 2014) (findings and recommendations adopted in full on May 21, 2014); *Lancaster v. Amos*, No. 1:09-cv-00683-CWD, 2013 WL 6198281, at *10

(D.Idaho 2013). In any event, because the Court did not rely on any of the evidence objected to on hearsay grounds, it need not reach those objections.

**B.     Summary of Plaintiff's Claim**[3]

In his second amended complaint, Plaintiff alleges that on December 14, 2010, he alerted control booth officer G. Avila that he and his cellmate, inmate Johnson, were not compatible and were not getting along, and that they needed to be separated immediately due to threat of a physical altercation. Twenty minutes later, Correctional Sergeants E. Stark and E. Gomez arrived at Plaintiff's cell; and he informed them that he "was feeling homicidal tendencies," his "safety was in jeopardy," and he and inmate Johnson needed to be "immediately separated." (Doc. 11, 2nd Amend. Comp., ¶3.) Defendant Stark said she and Defendant Gomez would not be able to address a cell move until after institutional count but they would return. They did not return, however.

On December 15, 2010, Defendant E. Garcia and Officer R. Rielo came to Plaintiff's cell with Medical Technical Assistant M. Camia, who was distributing inmate Johnson's medication. Inmate Johnson told Garcia and Rielo that he was willing to share a cell with anyone in the building to get him out of the cell with Plaintiff due to their continued hostility. Defendant Garcia said it was too late to make a bed move and it would be addressed the next day. Inmate Johnson then struck Plaintiff in the face with his closed fist, knocking Plaintiff to the ground and splitting his eye open.

Plaintiff and inmate Johnson were pepper sprayed, handcuffed, and taken to the program office, where they were put in separate holding cages. Plaintiff was subsequently taken to an outside hospital, where he received eight stitches to the laceration above his right eye.

**C.     Summary of Undisputed Facts**

Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and during the events at issue, he was incarcerated at KVSP.[4] At that

---

[3] Plaintiff's second amended complaint is verified, and contentions set forth in verified pro se pleadings, motions, and/or oppositions constitute evidence where the contentions are based on personal knowledge of facts admissible in evidence. *Jones*, 393 F.3d at 922-23.

[4] On July 14, 2015, Plaintiff filed a notice of change of address from KVSP to California State Prison-Corcoran.

5

time, Defendants Stark and Gomez were Correctional Sergeants at KVSP, and Defendant Garcia was a Correctional Officer at KVSP.

Under California Code of Regulations, Title 15, section 3269, it was the expectation "that all inmates double cell, whether being housed in a Reception Center (RC), General Population (GP), an Administrative Segregation Unit (ASU), a Security Housing Unit (SHU), or specialty housing unit." Inmates were expected to accept their housing assignment if cleared for a double cell, and were "not entitled to a single cell assignment, housing location of choice, or to a cellmate of their choice." Cal. Code Regs., tit. 15, § 3269. The KVSP Operational Manual Supplement required that all inmates be double celled unless specifically prohibited, and classification committees made single cell status determinations.

On November 22, 2010, the KVSP Facility B Unit Classification Committee cleared Plaintiff for a double cell; and on December 7, 2010, KVSP's Administrative Segregation Unit Institutional Classification Committee cleared him to be released to any KVSP general population facility and cleared him for double cell placement.

On December 14 and 15, 2010, Plaintiff was housed in cell 117 in Building 3 on Facility B. On December 14, 2010, Plaintiff and inmate Johnson were celled together for the first time. Staff brought inmate Johnson to Plaintiff's cell at some point in the afternoon around 3:00 p.m. on December 14, 2010. Plaintiff and inmate Johnson were not documented enemies before they were housed together and they had never had a problem or been involved in a physical altercation, as they did not know one another prior to December 14, 2010. Plaintiff was not affiliated with any disruptive groups and to his knowledge, inmate Johnson was not affiliated with any disruptive groups, either.

Two hours after inmate Johnson moved in, he used the bathroom and got a small amount of urine on the floor. Plaintiff told him to clean it up and he did. Plaintiff was not angry with inmate Johnson over it; and after inmate Johnson cleaned up the mess, Plaintiff does not recall arguing or having any conversations with Johnson on December 14, 2010.

On December 14, 2010, Correctional Officer Avila was working as the Control Booth Officer for Facility B, Building 3, during the third watch from 1400 to 2200 hours. Plaintiff asked

Officer Avila if he could talk to a sergeant about his cellmate, and Officer Avila called the Facility B Program Office. Officer Avila did not observe anything from the control booth while he was on duty on December 14, 2010, that suggested Plaintiff and inmate Johnson could not be safely housed together.

Defendant Stark came to Facility B, Building 3, to speak with Plaintiff. After Defendant Stark and the other staff left and the count ended, Plaintiff and inmate Johnson went to bed. Following that conversation, Plaintiff did not again ask Defendant Stark for a cell move and she did not have any additional contact with Plaintiff or inmate Johnson.

On the morning of December 15, 2010, Plaintiff and inmate Johnson did not speak when they woke up, and they did not speak with one another or have any altercations that morning or afternoon. Inmate Johnson did not do anything during that time that made Plaintiff upset. Plaintiff and Johnson would have had dayroom between 7:00 p.m. and 8:30 p.m., but on December 15, 2010, they did not have dayroom and remained in their cell. During that time period, Plaintiff and Johnson also did not speak to each other, and inmate Johnson did not do anything to make Plaintiff upset. At no point during the time they were celled together did inmate Johnson actually say that he was going to attack Plaintiff.

Officer Avila was again the Control Booth Officer for Facility B, Building 3, on December 15, 2010, during the third watch from 1400 to 2200 hours. Plaintiff and inmate Johnson did not tell Officer Avila that they were having any issues during third watch and they did not request a cell change. Officer Avila did not observe them fight, argue, or do anything that made him believe that they represented a serious risk to each other if they remained in the same cell.

Defendant Garcia and Officer Rielo were working as the Floor Officers in Building 3, Facility B, between 1400 and 2200 hours on December 15, 2010. At approximately 8:18 p.m. (2018 hours), Defendant Garcia and Officer Rielo escorted Licensed Vocational Nurse ("LVN") Camia while she handed out medications to inmates in Building 3. Medications were typically handed out at approximately 8:00 p.m. (2000 hours); and it was the staff's responsibility to make sure that the medications were handed out in a timely fashion. Non-emergency requests and situations were handled after the medication rounds were completed. If an inmate asked for a cell

7

change during the medication round, Defendant Garcia would typically ask if it could wait until after the rounds and other scheduled activities were completed, at which time he would return and discuss the matter further. If there was an emergency, he would stop the medication delivery to handle the issue.

On December 15, 2010, Defendant Garcia, Officer Rielo, and the LVN arrived at cell 117 to hand out inmate Johnson's medication. Following a discussion, the particulars of which are in dispute, inmate Johnson punched Plaintiff in the face without any warning and without saying anything. Defendant Garcia immediately yelled "get down" at the inmates, but they did not stop fighting. Officer Rielo activated his personal alarm and Defendant Garcia used the institutional radio to tell central control that there was a fight. Defendant Garcia ordered the inmates to step backwards to the food port to be handcuffed. Additional staff responded to the building, including Correctional Officer Espinoza. Officer Espinoza handcuffed Plaintiff and escorted him out of the building. Defendant Garcia handcuffed inmate Johnson and escorted him to the Facility B Program Office. Defendant Garcia and Officer Rielo completed Crime/Incident Report Part-C Staff Reports regarding the incident, and they did not have any additional involvement with the incident.

Defendant Stark was not on duty, but Defendant Gomez was and he responded to a Code 1 audible alarm at cell 117 in Building 3, Facility B, at approximately 2018 hours on December 15, 2010. When Defendant Gomez arrived in Building 3, Officer Espinoza and Defendant Garcia were escorting Plaintiff and inmate Johnson out of cell 117. Defendant Gomez completed a Crime/Incident Report Part-C Staff Report as a member of the staff that responded to the incident, and he did not have any other involvement in the incident.

On the same day as the fight, Plaintiff and inmate Johnson both signed a CDC-128-A General Chrono stating that, even after their fight, they did not consider each other an enemy and they could continue to be housed on the same facility together without any further incident. Plaintiff did not consider inmate Johnson an enemy after the fight.

Defendants Stark, Gomez, and Garcia were not responsible for placing Plaintiff on double cell status, and they did not have authority to classify an inmate for a single or a double cell or to

8

change the inmate's classification.  Prior to the events at issue, Plaintiff had never told Defendants that he could not have a cellmate, and Plaintiff never had any issues with them either before or after the incidents on December 14, and 15, 2010.

It was not uncommon for inmates to ask for cell changes or to ask for a single cell.  Often times the requests were not based on any emergency situation or risk of harm.  Inmates frequently claimed that they could not live with another inmate or that they needed to be in a single cell even though there is no actual risk presented by living together.  Custody staff attempted to ensure the safety and security of inmates and staff by trying to house compatible inmates together in cells, and at the time, non-emergency cell moves were typically conducted on the weekends.

Building Floor Officers such as Defendant Garcia had other duties to attend to in addition to conducting cell moves. They conducted inmate counts, checked the cells to make sure there were not issues between other inmates, supervised inmate workers, and conducted medication rounds, as well as other duties.  Facility B Yard Sergeants such as Defendants Stark and Gomez had other duties to simultaneously attend to in addition to conducting cell moves.  They supervised prison officials working on the facility, ensured that all areas of the facility were safe and clean, responded to other areas of the facility, and handled staff and inmate issues.

### D. Claim Against Defendants Stark and Gomez Arising from Incident on December 14, 2010

#### 1. Defendants' Version of Events

Defendants Gomez and Stark argue that they are entitled to judgment because the possibility of an attack was too attenuated and speculative to be considered an objectively serious risk of harm.  Further, Defendant Stark did not knowingly disregard a substantial risk of serious harm to Plaintiff's safety, and Defendant Gomez could not have done so because he did not work at KVSP on December 14, 2010.

Defendants contend that Plaintiff had been cleared to be double celled and neither he nor inmate Johnson was affiliated with a prison gang.  The two inmates did not know each other, so there was no history of arguments or altercations; and they both accepted the cell assignment on December 14, 2010.  They had only been celled together for a few hours when Plaintiff spoke with

9

Defendant Stark and prior to speaking with her, their only disagreement had been about the small amount of urine inmate Johnson got on the floor.  However, inmate Johnson had cleaned it up and Plaintiff was not angry over it.

Defendants contend that Plaintiff admitted his fear of inmate Johnson was not specific to Johnson, but was based on a generalized fear he had of all inmates.  Further, Plaintiff's statement that he was feeling homicidal was based on his general fear after seeing other inmates killed rather than on a statement by inmate Johnson that he was going to kill or attack Plaintiff.  Instead, Plaintiff believed he was a special case and he could not cell with any inmate in CDCR.  When inmate Johnson first moved into the cell on December 14, 2010, he and Plaintiff talked a little bit and they did not argue.

Defendants contend that Plaintiff told Defendant Stark he was previously in a single cell without a cellmate and he felt a little bit uncomfortable having a cellmate. (Doc. 76-6, Motion, Stark Decl., ¶4.)  Defendant Stark told Plaintiff that he was cleared for a double cell and it may take some time to get accustomed to having a cellmate. (*Id.*, ¶5.)  Defendants contend that even accepting Plaintiff's position that some risk existed, it was speculative, as he did not provide any details regarding the reason he wanted the cell move, he agreed that it was okay to wait, and he was fine with Defendant Stark's response.

Defendant Stark attests that she did not hear Plaintiff say he was feeling homicidal, and she did not hear him say anything or see him do anything that suggested he or his cellmate represented a risk to the other if they remained in the cell together.  Defendant Stark contends that if she had observed anything that suggested Plaintiff or inmate Johnson presented a serious risk to the other, she would have taken appropriate steps to separate the inmates.  After Defendant Stark left Plaintiff and inmate Johnson's cell, she did not believe that they represented a risk to each other if they remained cellmates; and after she left and count ended, Plaintiff and inmate Johnson did not speak to each other and they did not have any tension or arguments the rest of the night.

### 2. **Plaintiff's Version of Events**

Plaintiff's point of view differs with respect to the interaction on December 14, 2010.  Plaintiff contends that after inmate Johnson moved in with him, hostility arose between them and

approximately five or six hours later, he informed the control booth officer that they were not getting along and needed to be separated. Approximately twenty minutes later, Defendants Stark and Gomez came to his cell and he told them he was feeling violent and homicidal toward his cellmate and they needed to be separated. Defendant Stark told Plaintiff that they would return after count but they never returned.

### 3. Findings

#### a) Eighth Amendment Failure-to-Protect Standard

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832-33, 114 S.Ct. 1970 (1994) (quotations omitted). Prison officials have a duty to protect prisoners from violence at the hands of other prisoners because being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society. *Farmer*, 511 U.S. at 833-34 (quotations omitted); *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir. 2009); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). However, prison officials are liable under the Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a substantial risk of serious harm to an inmate. *Farmer*, 511 U.S. at 834, 841 (quotations omitted); *Clem*, 566 F.3d at 1181; *Hearns*, 413 F.3d at 1040.

#### 1) Objective Element – Risk of Serious Harm

To prevail on a claim for violation of the Eighth Amendment, an inmate must first show a deprivation which is objectively sufficiently serious. *Farmer*, 511 U.S. at 834. For a failure-to-protect claim, an inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* "The objective question of whether a prison officer's actions have exposed an inmate to a substantial risk of serious harm is a question of fact." *Lemire v. California Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1076 (9th Cir. 2013) (citations omitted). "'[A]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes'" has not been fleshed out, *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050-51 (9th Cir.

11

2002) (citing *Farmer*, 511 U.S. at 834), but "the qualitative difference between the degree of risk that will result in liability under the Eighth Amendment standard, and that which will not, is a fact-bound inquiry," *A. D. v. California Highway Patrol*, 712 F.3d 446, 455 n.4 (9th Cir. 2013), and it "must be decided by a jury if there is any room for doubt," *Lemire*, 726 F.3d at 1075-76 (citations omitted).

### 2) Subjective Element – Deliberate Indifference

The second element of an Eighth Amendment claim is subjective deliberate indifference, which involves two parts. *Lemire*, 726 F.3d at 1078. Plaintiff must demonstrate first that the risk was obvious or provide other circumstantial evidence that Defendants were aware of the substantial risk to his safety, and second that there was no reasonable justification for exposing him to that risk. *Id.* (citing *Thomas*, 611 F.3d at 1150) (quotation marks omitted).

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Id.* at 838. However, prison officials are not free to ignore obvious dangers to inmates. *Farmer*, 511 U.S. at 842; *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009). Prisoners "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *Foster*, 554 F.3d at 814.

///

///

12

**b)** **Existence of Triable Issues of Fact**

**1)** **Risk of Harm**

The Court is not persuaded by Defendants' argument that, as a matter of law, any risk of harm was too tenuous or speculative to support an Eighth Amendment claim. Inmate Johnson was Plaintiff's first cellmate following prison officials' decision to clear him for double celling and the two inmates did not know one another, a factor which is suggestive of an increased risk of harm rather than a decreased risk, as argued by Defendants. *See Estate of Ford*, 301 F.3d at 1052 (noting it appeared safer to officer to house two inmates together who had previously been housed together without a problem). (Doc. 76-9, Motion, 15:6-7.) Although they both accepted the cell assignment and there were no factors initially signaling incompatibility, such as affiliation with disruptive groups, Plaintiff has submitted evidence that some hostility developed within hours of the cell assignment and within five or six hours, he sought assistance from the control booth officer. Plaintiff allegedly told Officer Avila that he and inmate Johnson needed to be separated because they were not getting along; and when Defendants Stark and Gomez arrived at his cell, he told them he was feeling violent and homicidal toward Johnson and the two needed to be separated.

Although Defendant Stark denies that she heard Plaintiff say he was feeling violent and homicidal toward inmate Johnson, Plaintiff's version of events must be credited, *e.g.*, *George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014), and a statement by an inmate that he is feeling violent and homicidal clearly suffices to support the existence of an objectively substantial risk of serious harm. That Plaintiff allegedly stated he felt violent and homicidal toward inmate Johnson does not undercut his claim, either, as the Eighth Amendment imposes a duty on prison officials to ensure reasonable personal safety and Plaintiff's statement indicated a risk of harm to one or both of the inmates. While a jury might ultimately find an insufficient risk of harm given all of the circumstances, Plaintiff has submitted evidence that there was hostility between the two inmates and that he voiced his violent feelings to Defendants Stark and Gomez.

///

///

### 2) **Deliberate Indifference**

Regarding the subjective element, Defendant Gomez denies he was on duty on December 14, 2010, a position supported by declarations and his "Employee's Attendance Record and PALS Worksheet."[5] (Doc. 76-2, Motion, pp. 48-52.) However, Plaintiff's declaration and those of two eye witnesses, including inmate Johnson, contain attestations that Defendant Gomez came to Plaintiff's cell on December 14, 2010, with Defendant Stark.[6] The Court cannot weigh the parties' conflicting evidence or make credibility determinations on summary judgment, *e.g.*, *George*, 752 F.3d at 1214, and Plaintiff's evidence suffices to create a disputed issue of material fact regarding whether Defendant Gomez was on duty on December 14, 2010.[7]

Next, Plaintiff alleges that after he told Defendants Stark and Gomez that he was feeling violent and homicidal, Stark said she and Gomez would return after count. However, they never returned and the cellmates were left alone for the night. This evidence suffices to support a finding that Stark and Gomez were on notice regarding a risk of harm to Plaintiff and inmate Johnson but they did not take any action, and although Plaintiff was agreeable to waiting until count was completed, they failed to return at all. (Caver Depo., 35:20-36:3.)

Accordingly, the Court recommends that Defendants Stark and Gomez's motion for summary judgment be denied.

---

[5] Although Plaintiff argues that the record is falsified, his opposition brief is not verified, *Jones*, 393 F.3d at 922-23, and mere arguments made therein do not constitute evidence, *Coverdell*, 834 F.2d at 762.

[6] "[T]he requirement of personal knowledge imposes only a minimal burden on a witness; if reasonable persons could differ as to whether the witness had an adequate opportunity to observe, the witness's testimony is admissible." *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) (internal quotations and citation omitted). Although allegations based purely on belief do not suffice, the personal knowledge threshold is particularly low at summary judgment because all justifiable inferences must be drawn in favor of the nonmoving party. *Id.* (quotations and citations omitted).

[7] Defendants' reliance on *Scott v. Harris*, 550 U.S. 372, 380 (2007) to support their argument that Plaintiff's version of events is thoroughly contracted is misplaced. (Doc. 88, Reply, 3:24-3.) *Scott* involved videotape evidence that blatantly contradicted one party's version of events. Here, there is no videotape of the incident that contradicts Plaintiff's sworn testimony regarding Gomez's presence nor is there any evidence, via deposition, declaration or otherwise, that undercuts Plaintiff's or his witnesses competency to identify of Gomez. *Strong*, 724 F.3d at 1045. To the contrary, Plaintiff had been at KVSP since 2005, which could support a reasonable inference that he was familiar with assigned staff and would not mistakenly identify Gomez. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," *George*, 752 F.3d at 1214 (internal quotation marks and citations omitted), and the Court may not simply disregard Plaintiff's declaration and those of his witnesses because Defendants submitted a record along with their other evidence.

14

### E.   Claim Against Defendant Garcia Arising from Incident on December 15, 2010

#### 1.   Defendant's Version of Events

Defendant Garcia contends that when he and Officer Rielo accompanied LVN Camia to Plaintiff and inmate Johnson's cell to hand out medication, Johnson asked him for a cell change but did not say anything that made Garcia think there was a serious risk if the cell move did not happen immediately. Inmate Johnson did not say that they needed to change cells because he might strike Plaintiff or because there was any risk. Defendant Garcia responded that the cell change could not happen because it was getting close to the final count, but that the move could happen after the final count was completed, as the move would have to follow proper procedure and be approved by the proper staff.

After Defendant Garcia and Officer Rielo left cell 117, they heard a loud slam against the door. They immediately returned to the cell and saw Plaintiff and inmate Johnson fighting. Officer Rielo ordered Plaintiff and inmate Johnson to stop fighting and get down, but they did not stop. Defendant Garcia opened the food port and ordered Plaintiff and inmate Johnson to stop fighting. Officer Rielo discharged his MK-9 OC spray into the cell. Plaintiff and inmate Johnson stopped fighting and got down on the floor.

#### 2.   Plaintiff's Version of Events

In his declaration, Plaintiff attested that at approximately 8:20 p.m., he and inmate Johnson spoke to Defendant Garcia and Officer Rielo about being separated because they were not getting along, there was hostility between them, and the situation could become violent. (Doc. 78, Opp., Caver Decl., pp. 13-14.) In his deposition, Plaintiff testified that he asked if one of them could be moved out of the cell because they were not getting along and were going to end up having a fight, or something bad was going to end up happening. (Doc. 77, Caver Depo., 43:16-19.) Plaintiff also submitted declarations by inmates Johnson and Talley, who attested that Plaintiff and Johnson talked to Garcia about being moved because they were not getting along, and Johnson told Garcia he would move in with anyone just to get out of the cell with Plaintiff.[8] (Opp., Johnson Decl. & Talley Decl., pp. 16-19.) However, Defendant Garcia responded that it was too late and the move

---

[8] Inmate Talley was in the cell next door.

15

would have to occur in the morning. Inmate Johnson then immediately punched Plaintiff in the face, knocking him to the ground and causing a laceration above his eye that required stitches.

### 3. Findings

Plaintiff's evidence suffices to raise triable issues of fact regarding whether Defendant Garcia was deliberately indifferent to an objectively substantial risk of serious harm. Defendant Garcia was allegedly placed on notice by both Plaintiff and inmate Johnson that the two inmates were not getting along and there were hostilities which might turn to violence. While the existence of an objective threat of harm may be undercut at trial by the undisputed evidence that Plaintiff and inmate Johnson did not seek assistance between the evening of December 14, 2010, and the evening of December 15, 2010, those determination lie with the jury. There is evidence in the record that Plaintiff and inmate Johnson were not speaking to one another and were interacting minimally while hostilities were building. Both inmates spoke with Defendant Garcia the evening of December 15, 2010, and placed him on notice that they needed to be separated and were concerned that the situation could become violent. In response, Defendant Garcia said they would have to wait until the morning. This is sufficient to support Plaintiff's claim that Defendant Garcia knowingly disregarded a substantial risk of serious harm to their safety. A jury may or may not conclude that any risk of harm was not substantial enough to implicate the Eighth Amendment and/or that Defendant Garcia acted reasonably under the circumstances, but those are determinations which cannot be made by the Court. Accordingly, the Court recommends that Defendant Garcia's motion for judgment as a matter of law be denied.

### F. Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity. Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity balances two

important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001); *Mueller*, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. *Pearson*, 555 U.S. at 236 (overruling holding in *Saucier* that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); *Mueller*, 576 F.3d at 993-94.

### 1. <u>Constitutional Violation</u>

"The constitutional right at issue in this case is the right to be free from violence at the hands of other inmates," *Castro v. Cnty. of Los Angeles*, 785 F.3d 336, 344 (9th Cir. 2015), and the fact must be viewed in the light most favorable to Plaintiff, *Chappell v. Mandeville*, 706 F.3d 1052, 1057 (9th Cir. 2013). This case involves the potential for in-cell violence between cellmates. Plaintiff is a Level IV inmate who has been incarcerated for approximately fifteen years.[9] (Doc. 77, Caver Depo., 10:17-19 & 28:14-16.) Plaintiff was transferred to KVSP in 2005, and he had been on long-term single cell status when he was cleared for double celling by two classification committees and then released from administrative segregation to general population. (Doc. 78, Opp., Caver Decl., p. 14; Doc. 76-2, Motion, Def. Ex. F2-F3.) Inmate Johnson was the first cellmate Plaintiff had at KVSP, and both inmates attested that within hours of accepting their cell assignment on December 14, 2010, hostilities arose between them and they were concerned about the possibility of violence between them.

---

[9] In the California prison system, Level IV is maximum security. Cal. Code Regs., tit. 15, § 3377(d); *Thomas*, 611 F.3d at 1146; *Estate of Ford*, 301 F.3d at 1051; *Pratt v. Rowland*, 65 F.3d 802, 804 (9th Cir. 1995).

17

Plaintiff alerted Defendants Stark and Gomez that they needed to be separated because he was feeling violent and homicidal toward his cellmate, but they never returned after representing to Plaintiff that they would return after count was complete. The next evening, Plaintiff and inmate Johnson informed Defendant Garcia that there was hostility between them and they needed to be separated because the situation could turn violent. Defendant Garcia responded that it was too late and the move would need to wait until the next day. Inmate Johnson then promptly punched Plaintiff in the face.

Plaintiff's evidence regarding the events in question, accepted at true at this juncture, is sufficient to allow a reasonable jury to conclude that Defendants knowingly disregarded an objectively serious risk of harm to Plaintiff's safety, in violation of the Eighth Amendment. *Foster*, 554 F.3d at 815.

### 2. **Clearly Established Right**

Regarding the second step of the inquiry, "[f]or a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508 (2002). While the reasonableness inquiry may not be undertaken as a broad, general proposition, neither is official action entitled to protection "unless the very action in question has previously been held unlawful." *Hope*, 536 U. S. at 739. "Specificity only requires that the unlawfulness be apparent under preexisting law," *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances," *Hope*, 536 U.S. at 741.

The existence of material factual disputes does not necessary preclude a finding of qualified immunity. *Estate of Ford*, 301 F.3d at 1053. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," *Ashcroft v. al-Kidd*, __ U.S. __, __, 131 S.Ct. 2074, 2085 (2011). Here, however, the duty to protect inmates from harm at the hands of other inmates had long been established by 2010, and no reasonable officer could have believed that deferring action on a problem between cellmates until the next day was appropriate when they were on notice that there was hostility between them

18

and a threat of physical violence between them existed. *Farmer*, 511 U.S. at 832-33; *Castro v. Cnty. of Los Angeles*, 785 F.3d 336, 345 (9th Cir. 2015); *Hearns*, 413 F.3d at 1040; *Leer v. Murphy*, 844 F.2d 628, 633-34 (9th Cir. 1988); *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986); *cf. Estate of Ford*, 301 F.3d at 1047 (granting qualified immunity in a failure to protect case where the two cellmates had previously been celled together with no problem and neither sought to be separated from the other prior to the attack). The Court reiterates that to the extent Plaintiff's version of events lacks credibility and/or is undermined by some of the facts presented, that evaluation must be made by the jury. *E.g.*, *Castro*, 785 F.3d at 346; *Cortez v. Skol*, 776 F.3d 1046, 1053 (9th Cir. 2015); *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1983 (9th Cir. 2011).

Accordingly, the Court finds that Defendants are not entitled to qualified immunity.

**IV.     Recommendation**

For the reasons set forth herein, the Court finds that there exist disputed issues of material fact which preclude Defendants' from entitlement to judgment on the merits or on qualified immunity grounds. Therefore, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed on January 23, 2015, be DENIED, and this action be set for trial.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fifteen (15) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. Local Rule 304(b). The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Responses, if any, are due within **fifteen (15) days** from the date the objections are filed. Local Rule 304(d). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on

///
///
///
///
///
///

19

appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **July 25, 2015**                             **/s/ Sheila K. Oberto**
                                                                 UNITED STATES MAGISTRATE JUDGE